**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF GEORGIA**

**ATLANTA DIVISION**

| | |
|---|---|
| **FLEET SALVAGE SYSTEMS, INC.**, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| **PORSCHE CARS NORTH AMERICA, INC.**, | **PROPOSED CLASS ACTION** |
| Defendant. | |

Plaintiff Fleet Salvage Systems, Inc. ("Plaintiff" or "Fleet Salvage") individually and on behalf of all others similarly situated, alleges the following against Defendant Porsche Cars North America, Inc. ("Porsche" or "Defendant"). The following allegations are based on Plaintiff's knowledge, investigations by Plaintiff's counsel, facts of public record, and information and belief:

## NATURE OF THE ACTION

1. This is an antitrust class action challenging Defendant's unlawful monopolization of the market for repair services for Porsche Affected Vehicles in the United States.[1]

2. Porsche has designed its Affected Vehicles' electronic architecture so that only Porsche-authorized dealers can access essential diagnostic, calibration, coding, and software tools required to complete any servicing or repair. Defendant conspired with its dealers (the "Dealerships" or "Dealers") to implement its unlawful anti-competitive practices.

3. Independent repair providers ("IRPs"), including independent mechanics and automotive service businesses, are foreclosed from competing in the market for many repairs on

---

[1] For the purposes of this Complaint, "Affected Vehicles" are defined as all vehicles sold by Defendant between January 1, 2021 and present.

Porsche vehicles because Porsche refuses to make fully functional repair tools, software access, coding capability, and ECU programming access available to IRP's or independent mechanics.

4.     Defendant, by employing proprietary software and hardware embedded in its vehicles, enables only its Porsche-authorized dealers to perform repair and diagnostic services on the Affected Vehicles. IRPs are unable to perform certain essential repairs and thus unable to competitively constrain Porsche-authorized dealers in the provision of these and other key repair services. Plaintiff and other Porsche vehicle owners are forced to turn to Porsche-authorized dealers for repairs that they would do themselves or take to an IRP or independent mechanic but for Porsche's restrictions.

5.     As a result, Porsche has acquired and maintained monopoly power in a relevant market for repair services. Porsche's dealers are able to maintain a 100% market share and charge supracompetitive prices for all repairs and maintenance on Affected Vehicles, and Porsche itself reaps additional profits through parts sales.

6.     Porsche vehicle owners, including the Plaintiff herein, are forced to obtain many repairs and maintenance exclusively from Porsche-authorized dealers at supracompetitive prices.

7.     Porsche's restrictions deprive Plaintiff and other Porsche Subject Vehicle owners of the use of their own repair labour, deny them access to their preferred repair service provider and force them to spend more on repair, maintenance and parts. Porsche authorized dealers charge more for service than IRPs. And unlike IRPs, Porsche dealers also almost always use more expensive Porsche-branded parts in their repairs.

8.     Durable, reliable, and easy repairs are critical to the safe operation of the Affected Vehicles. Therefore, Porsche's misconduct inflicts financial harm on all Affected Vehicles' owners and lessees, in the form of higher charges for service and parts, and exposes them to danger on the road.

9.     Porsche's conduct constitutes unlawful monopolization and attempted monopolization in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

10.     Through this action, Plaintiff seeks to remedy these injuries on behalf of themselves and all similarly situated individuals who have been forced into getting their Porsche Affected Vehicles repaired or serviced by only Porsche authorized dealers.

11.     Plaintiff seeks a permanent injunction and other equitable relief under federal and state antitrust laws.

## JURISDICTION AND VENUE

12.     This action arises under Section 2 of the Sherman Act, 15 U.S.C. § 2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and § 1337(a) and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26because this action arises under the laws of the United States and under an Act of Congress regulating interstate commerce.

13.     Defendant Porsche Cars North America, Inc. is headquartered in Atlanta, Georgia, and maintains its principal place of business at One Porsche Drive, Atlanta, Georgia 30354. Defendant transacts substantial business in this District and has engaged in the unlawful conduct alleged herein within this District.

14.     This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in Atlanta, Georgia. Defendant is therefore "at home" in this District for purposes of general personal jurisdiction.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant resides in this District and a substantial part of the events giving rise to the claims occurred in this District.

## PARTIES

16.     Plaintiff Fleet Salvage Systems, Inc. is a corporation organized under the laws of Florida with its principal place of business in Longwood, Florida.

17.     Plaintiff owns a Porsche Cayenne vehicle ("Subject Vehicle"). As described more fully below, Plaintiff required maintenance on the Subject Vehicle that could not be performed by IRPs due to Porsche's electronic access restrictions.

3

18.     Defendant Porsche, is a Delaware corporation with its principal place of business located at One Porsche Drive, Atlanta, GA, 30354, USA. Porsche is the exclusive U.S. importer and distributor of Porsche vehicles, including the Affected Vehicles.[2]

19.     Defendant's co-conspirators include all independently-owned Porsche Dealerships in the United States with agreements with Defendant giving them the right to sell new Affected Vehicles and parts, and to repair Affected Vehicles, which were sold in interstate commerce, directly or through its wholly-owned or controlled affiliates, to purchasers in the United States.

## FACTUAL ALLEGATIONS

### *Porsche Vehicles Require Proprietary Electronic Access for Repair and Maintenance*

22.     Upon information and belief, Porsche Affected Vehicles rely extensively on proprietary electronic control units ("ECUs"), software coding, firmware, encrypted modules, telematics systems, and proprietary diagnostic protocols. In the Affected Vehicles, each of these systems is designed to restrict access to Porsche dealers alone. In contrast, IRPs cannot obtain full access to these systems in the Affected Vehicles. As a result, IRPs cannot complete numerous common repairs and maintenance operations on the Affected Vehicles.

23.     Vehicle manufacturers' attempts to block IRPs and vehicle owners themselves from performing maintenance and repairs has become a national concern. In February 2022, U.S. lawmakers introduced "Right to Repair" legislation which aimed to allow consumers the freedom to choose where they maintain and repair their vehicles. At the time, President Biden observed that, in too many cases "if you own a product, from a smartphone to a tractor, you don't have the freedom to choose how or where to repair that item you purchased."[3] To date, the bill has not been passed into legislation.

---

[2] https://www.porsche.com/usa/porsche-cars-north-america/
[3] https://www.reuters.com/world/us/us-lawmakers-introduce-right-repair-bills-spur-competition-2022-02-03/

*Porsche Has Monopoly Power in the Repair and Maintenance Market*

25.    Porsche has designed the Affected Vehicles in a way that Porsche and its co-conspirator Dealers are the only entities capable of servicing or repairing the Affected Vehicles. Porsche therefore possesses a 100% market share in fully functional Porsche maintenance and repair the Affected Vehicles.

26.    By restricting repair and maintenance capabilities to its co-conspirator Dealers, Porsche ensures that authorized dealers hold a 100% share of the restricted Porsche repair and maintenance services market in respect of the Affected Vehicles.

27.    Affected Vehicle owners cannot reasonably substitute away from Porsche-authorized repair and maintenance services at and co-conspirator Dealers once they have purchased an Affected Vehicle.

28.    Switching costs are substantial, including vehicle replacement costs, resale loss, and brand-specific integration.

29.    Consumers cannot effectively conduct lifecycle pricing at the time of purchase because the extent of future electronic repair restrictions and servicing is not transparent or disclosed to the purchasers of Affected Vehicles.

*Porsche's Conduct of Unlawful Restrictions on Servicing and Repairs is Exclusionary*

30. Porsche has wilfully maintained monopoly power by:

- Refusing to provide servicing or repairing abilities to IRP's or independent mechanics;
- Limiting software programming capability to authorized co-conspirator Dealers;
- Foreclosing competition in repair service markets.

31.    Porsche's conduct is not justified by legitimate safety, environmental, or intellectual property concerns.

32.    Comparable manufacturers in other automotive sectors provide broader repair and servicing access without compromising safety or IRP.

33.     Porsche's restrictions inflate service and repair prices above competitive levels, harming competition for servicing and repairs.

34.     Porsche's repair restrictions benefit its co-conspirator dealers and its own business while harming IRPs along with the Plaintiff and other owners of Affected Vehicles, who suffer the increased cost.

35.     Plaintiff and Class Members have accordingly paid supra-competitive prices for restricted servicing and repairs.

***The Repair and Servicing Restrictions Imposed Are Not Reasonably Necessary to Achieve Any Cognizable Procompetitive Benefits***

36.     Porsche's practices as alleged herein are not reasonably necessary to achieve any cognizable procompetitive benefits. The harm from those practices outweighs any procompetitive benefits, and Porsche could reasonably achieve any procompetitive objectives through less restrictive means.

***Plaintiff's Experience***

37.     Plaintiff owns the Subject Vehicle. On or about June 6, 2025, Plaintiff took the subject vehicle to an IRP, Tire Kingdom, in order to change oil and replace the oil filter. However, Tire Kingdom informed Plaintiff that it was unable to reset the oil life indicator, due to electronic restrictions imposed by Defendant. Only Defendant and its dealers were able to "clear the code" to reset the oil indicator. This resulted in an effective monopoly maintained by Defendants upon service and repairs, including oil changes, which Defendant performs at a far higher price than IRPs. Plaintiff was forced to pay a higher price for routine maintenance at one of Defendant's co-conspirator Dealerships.

38.     Upon information and belief, Defendant's monopoly on repairs and maintenance extends to all Affected Vehicles.

## CLASS ACTION ALLEGATIONS

39.     Plaintiff brings this class action individually and on behalf of all similarly situated

persons under Federal Rule of Civil Procedure 23. Plaintiff seeks certification under Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3) of the following Nationwide Class (the "Class"):

> All persons and entities in the United States who paid a Porsche-authorized dealer to perform repairs or maintenance services on Affected Vehicles.

40.     The Class defined above is readily ascertainable from information in Defendant's possession. Thus, such identification of Class Members will be reliable and administratively feasible.

41.     Excluded from the Class are: (1) any judge or magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, affiliated entities, and any entity in which Defendant or their parent has a controlling interest, and their current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; (6) members of the jury; and (7) the legal representatives, successors, and assigns of any such excluded persons.

42.     Plaintiff reserves the right to amend or modify the Class definitions as this case progresses.

43.     Plaintiff satisfies the numerosity, commonality, typicality, and adequacy requirements under Fed. R. Civ. P. 23.

44.     **<u>Numerosity</u>**. Class Members are numerous such that joinder is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time, based on information and belief, the Class consists of thousands of individuals and entities throughout the United States who paid Porsche-authorized co-conspirator Dealers for servicing or repair of their Affected Vehicles.

45.     **<u>Commonality</u>**. There are many questions of law and fact common to the Class. And these common questions predominate over any individualized questions of individual Class

Members. These common questions of law and fact include, without limitation:

a) Whether the market for servicing and repair of Affected Vehicles constitutes a relevant antitrust market;

b) Whether Defendant's refusal to provide access to repair and servicing markets in respect of the Affected Vehicles foreclosed competition from IRPs;

c) Whether Defendant and and its co-conspirator Dealers monopolized the servicing and repair market in respect of the Affected Vehicles;

d) Whether Defendant's and its co-conspirator Dealers' conduct was exclusionary;

e) Whether Defendant's and its co-conspirator Dealers' conduct caused anticompetitive effects, including supracompetitive pricing in respect of repair and servicing for the Affected Vehicles;

f) Whether class members paid and Defendant and its conspirator Dealers supra-competitive prices for repair and servicing for the Affected Vehicles;

g) If Plaintiff and Class Members are entitled to damages, civil penalties, punitive damages, treble damages, and/or injunctive relief.

46. **Typicality**. Plaintiff's claims are typical of those of other Class Members because Plaintiff, like other Class Members, overpaid for repair and servicing of his Affected Vehicle as he had no option but to go to a Porsche-authorized dealership to avail of these services as a result of Defendant's exclusionary conduct.

47. **Adequacy of Representation**. Plaintiff will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiff's counsel is competent and experienced in litigating complex class actions. Plaintiff has no interests that conflict with, or are antagonistic to, those of the Class.

48. **Predominance**. Defendant has engaged in a common course of conduct toward

Plaintiff and Class Members, namely, its centralized policy and practice of restricting repairs and servicing to authorized dealers. The common issues arising are whether Defendant monopolized the relevant markets and whether such conduct resulted in anticompetitive effects are issues subject to common proof. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

49.     **Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a Class action presents far fewer management difficulties, conserves judicial resources, the parties' resources, and protects the rights of each Class Member.

50.     Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

51.     Likewise, particular issues under Federal Rule of Civil Procedure 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include those set forth above.

52.     Defendant has acted on grounds that apply generally to the Class as a whole, so that Class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

**TRADE AND COMMERCE**

53.    During the Class Period, Defendant, directly or through its subsidiaries or affiliated co-conspirator Dealerships, sold Porsche repair and maintenance services in the United States in a continuous and uninterrupted flow of interstate commerce and foreign commerce, including through and into this judicial district.

54.    During the Class Period, Defendant and its co-conspirators controlled the market for Porsche repair and maintenance services in the United States. Defendant's and its co-conspirators' business activities substantially affected interstate trade and commerce in the United States and caused antitrust injury in the United States.

**RELEVANT MARKETS**

55.    The principal relevant market to evaluate Defendant's and its co-conspirators' anticompetitive conduct is the Porsche repair and maintenance services market.

56.    The Porsche repair and maintenance services market constitutes various services to repair, maintain, and clear fault codes from Affected Vehicles.

57.    There are no available substitutes for Porsche repair and maintenance services, and Porsche repair and maintenance services are not interchangeable with any other manufacturers' service.

58.    The relevant geographic market is the United States.

59.    Defendant Porsche has market power in the relevant market through its technological tools which restrict IRPs' access to this market.

60.    Similarly, any Porsche vehicle owners who wish to perform their own repairs and/or maintenance are also unable to access the resources necessary to do so.

**ANTITRUST INJURY**

61.    Defendant's and its co-conspirators' anticompetitive conduct had the following

effects, among others:

a) Price competition has been restrained or eliminated with respect to Porsche repair and maintenance services;

b) The prices of Porsche repair and maintenance services have been fixed, raised, stabilized, or maintained at artificially inflated levels;

c) Purchasers of Porsche repair and maintenance services , including Plaintiff, have been deprived of free and open competition; and

d) Purchasers of Porsche repair and maintenance services, including Plaintiff, paid artificially inflated prices.

62. The purpose of Porsche's and its co-conspirator Dealers' conduct was to exclude competition and raise, fix, or maintain the price of Porsche repair and maintenance services. As a direct and foreseeable result, Plaintiff and the Class paid supracompetitive prices for Porsche repair and maintenance services  during the Class Period.

63. By reason of the alleged violations of the antitrust laws, Plaintiff and the Class have sustained injury to their businesses or property, having paid higher prices for Porsche repair and maintenance services than they would have paid in the absence of Porsche's illegal conduct, and as a result have suffered damages.

64. This is an antitrust injury of the type that the antitrust laws were meant to compensate and prevent.

## CLAIMS FOR RELIEF

### COUNT I: MONOPOLIZATION OF REPAIR AND SERVICING MARKET ARISING UNDER SECTION 2 OF THE SHERMAN ACT
(On Behalf of Plaintiff and the Class)

65. Plaintiff re-alleges and incorporates by reference paragraphs 1 to 64 of the Complaint as if fully set forth herein.

66. At all relevant times to this Complaint, Porsche possessed monopoly power in the repair and servicing market in respect of the Affected Vehicles, as Porsche or Porsche authorized

dealerships are solely capable of providing fully functional repair and servicing of the Affected Vehicles.

67.    Porsche willfully acquired and maintained that power through exclusionary conduct and holds a 100% share of the repair and servicing market. By restricting access exclusively to authorized dealers, Porsche ensures that authorized dealers collectively hold a 100% share of the restricted repair and services market in respect of the Affected Vehicles.

68.    Barriers to entry are substantial and include hardware and software tools which preclude independent mechanics from repairing or servicing the Affected Vehicles.

69.    Porsche vehicle owners are "locked in" after purchasing a Porsche vehicle and cannot switch to another vehicle brand without substantial losses. Switching costs are high and would include:

- Substantial vehicle purchase and depreciation costs;
- Financing arrangements;
- Brand-specific integration;
- Performance customization;
- Consumer preference and resale considerations.

70.    Porsche's conduct has caused anticompetitive effects, including elimination of competition for servicing and repairs; artificial restriction of repair output; supracompetitive pricing; reduced consumer choice; reduced service convenience; increased repair delays; suppression of independent repair and servicing capabilities.

71.    Defendant's conduct included concerted efforts, actions and undertakings among Defendant and the Co-conspirator Dealerships with the intent, purpose, and effect of artificially suppressing competition for Porsche repair and maintenance services.

72.    Defendant perpetrated the scheme with the specific intent of reducing competition in the Porsche repair and maintenance services  market to the benefit of Defendant and the Co-conspirator Dealerships.

73. Defendant's conduct in furtherance of its contracts, combinations and/or conspiracies were authorized, ordered, or done by its respective officers, directors, agents, employees, or representatives while actively engaging in the management of Defendant's affairs.

74. Plaintiff and Class Members paid higher rates for Porsche repair and maintenance services from Porsche and its Co-Conspirator Dealerships than they otherwise would have in the absence of Defendant's unlawful conduct, and, as a result, have been injured in their property and have suffered damages in an amount according to proof at trial.

75. Defendant's contracts, combinations, and/or conspiracies are per se violations of Section 1 of the Sherman Act.

76. In the alternative, Defendant is liable under a "quick look" analysis where an observer with a rudimentary understanding of economics could conclude that the arrangements in question would have an anticompetitive effect on customers and markets.

77. Defendant's contracts, combinations, and/or conspiracies have had a substantial effect on interstate commerce.

78. As a direct and proximate result of Defendant's contract, combination, and/or conspiracy to restrain trade and commerce, Plaintiff and Class Members have suffered injury to their business or property and will continue to suffer economic injury and deprivation of the benefit of free and fair competition.

79. Absent Porsche's restrictions, IRPs would compete on price, speed, and service quality, thus lowering the price and increasing the output.

80. In the alternative, to the extent Defendant is found not to possess monopoly power, Defendant has engaged in anticompetitive conduct with specific intent to monopolize and with a dangerous probability of achieving monopoly power.

81. Plaintiff and Class Members are entitled to treble damages pursuant to 15 U.S.C. § 15 and injunctive relief pursuant to 15 U.S.C. § 26.

## COUNT II: CONSPIRACY TO MONPOLIZE THE REPAIR AND SERVICING MARKET ARISING UNDER SECTION 2 OF THE SHERMAN ACT
### (On Behalf of Plaintiff and the Class)

82.    Plaintiff re-alleges and incorporates by reference paragraphs 1 to 52 of the Complaint as if fully set forth herein.

83.    Beginning approximately in 2001 and continuing thereafter to the present, Defendant, by and through its officers, directors, employees, agents, or other representatives, have explicitly or implicitly conspired with Co-conspirator Dealerships has willfully, knowingly, and with specific intent to do so, conspired to monopolize the Porsche repair and maintenance services, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

84.    No plausible pro-competitive arguments exist for Defendant's and the Co-conspirator Dealerships' refusal to allow owners and IRPs to perform repairs and maintenance on Defendants' vehicles.

85.    As a direct and proximate result of Defendant's and the Co-conspirator Dealerships' conspiracy to restrain trade and commerce, Plaintiff and Class Members have suffered injury to their business or property and will continue to suffer economic injury and deprivation of the benefit of free and fair competition.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff, on behalf of itself and all others similarly situated, request the following relief:

A.    An Order certifying this action as a class action and appointing Plaintiff as the Class Representative;

B.    Injunctive relief requiring Posche to provide fully functional servicing and repair capabilities in respect of Affected Vehicles to IRP's and independent mechanics on reasonable and nondiscriminatory terms.

C.    An award of damages, including actual, nominal, consequential damages, and

14

punitive, as allowed by law in an amount to be determined;

D.    An award of attorneys' fees, costs, and litigation expenses, as allowed by law;

E.    An award of pre- and post-judgment interest, costs, attorneys' fees, expenses, and interest as permitted by law;

F.    Granting the Plaintiff and the Class leave to amend this Complaint to conform to the evidence produced at trial;

G.    For all other Orders, findings, and determinations identified and sought in this Complaint; and

H.    Such other and further relief as this court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

Dated: May 6, 2026                    Respectfully Submitted,

/s/    *Gregory Bosseler*

GREGORY BOSSELER
**MORGAN & MORGAN, P.A.**
191 Peachtree Street N.E., Suite 4200
P.O. Box 57007
Atlanta, Georgia 30343-1007
gbosseler@forthepeople.com

JOHN A. YANCHUNIS*
jyanchunis@forthepeople.com
RONALD PODOLNY*
ronald.podolny@forthepeople.com
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Phone: (813) 275-5272
Fax: (813) 222-4736

*\*Pro hac vice forthcoming.*

**Counsel for Plaintiff and the Class**